THE MARYLAND AGRICULTURAL COLLEGE, use of JOHN H. SKINNER vs. THE BALTIMORE AND POTOMAC RAILROAD COMPANY, Garnishee of ROBERT BOWIE.

### Construction of a Contract—Attachment.

B. was authorized to canvass for, and receive subscriptions to the capital stock of a Railroad Company, then unorganized, his compensation to be one dollar per share on all subscriptions obtained by him, to be paid in the manner prescribed in the resolution conferring said authority, "and the further sum of three per cent. *upon the whole amount of subscriptions* which he may be instrumental in obtaining, *to be paid as the subscriptions to the capital stock shall be paid in.*" Under the authority thus given, B. procured subscriptions to the capital stock of the Company. Subsequently a very large amount of the stock so procured to be subscribed by B., was forfeited under the charter for non-payment of instalments due thereon, and the forfeitures were not remitted by the Company, nor did they sell, nor attempt to sell any part of the stock so forfeited, nor did they institute actions for the recovery of any of the subscriptions for said shares. Upon an attachment issued on a judgment recovered against B., and laid in the hands of the Railroad Company for the purpose of affecting B's supposed claim against the Company for commissions upon the amount of the subscriptions unpaid on the forfeited shares, it was HELD :

1st. That there were no rights or credits in the hands of the Company belonging to B., in respect to said forfeited shares.

2nd. That until the money subscribed, or its equivalent, was realized by the Company, either by the voluntary payment of the subscriber or his assignee, or by the modes of coercion designated by the charter, no commission could be claimed as due and payable thereon under the contract.

3rd. That whatever may have been the cause of the delay on the part of the Company, in attempting to make the subscriptions available, as the agent procuring the subscriptions is interested in the money to be realized therefrom, it may be that he has ample remedy by which to compel the Company either to sell the stock, or to remit the forfeitures and institute actions to recover the balance due on the subscriptions.

OCTOBER TERM, 1875.        435

Md. Agric'l College, use of Skinner *vs.* Balt. & Potom. R. R. Co. Garn.

4th. But until that be done and the money actually realized, there is no such certain or ascertainable amount due for commissions under the contract, as to be liable to attachment.

APPEAL from the Circuit Court for Prince George's County.

The Maryland Agricultural College obtained a judgment in 1863, in the Circuit Court for Prince George's County against Robert Bowie and John H. Skinner and others. This judgment was paid by said Skinner, one of the sureties, and it was entered to his use. The appellant proceeding under the aforesaid judgment, caused an attachment to be issued thereon, and laid in the hands of the Baltimore and Potomac Railroad Company, for the purpose of affecting a supposed indebtedness by the said Company to the said Robert Bowie under the facts stated in the opinion of this Court. The case was submitted to the Court below, (MAGRUDER, J.,) who rendered a judgment of condemnation in favor of the plaintiff for $2,58 and costs. The plaintiff appealed.

The cause was argued before BARTOL, C. J., BOWIE, STEWART, MILLER and ALVEY, J.

*Richard B. B. Chew,* for the appellant.

*Daniel Clarke,* for the appellee.

ALVEY, J., delivered the opinion of the Court.

The controlling question in this case arises upon the construction of the contract between the appellees and Robert Bowie, as evidenced by the resolutions passed on the 26th of August, 1858, and the 6th of April, 1859.

By the first of these resolutions, Robert Bowie was appointed agent to canvass for and receive subscriptions to the capital stock of the Company, then unorganized, his

436    MARYLAND REPORTS.

Md. Agric'l College, use of Skinner *vs.* Balt. & Potom. R. R. Co. Garn.

compensation to be one dollar per share, on all subscriptions obtained by him, to be paid out of the cash instalment of two dollars required by the charter to be paid by the subscriber at the time of subscription; " and the further sum of three per cent. *upon the whole amount of subscriptions* which he may be instrumental in obtaining, *to be paid as the subscriptions to the capital stock shall be paid in.*" And by the second of the resolutions referred to, this agent was authorized to obtain subscriptions to the capital stock of the Company, from citizens of Prince George's, Anne Arundel, Charles, St. Mary's and Calvert counties, and of any other persons whom he could induce to subscribe, *upon the terms theretofore agreed on between the agent and the Company;* and by that resolution he was required to give bond in such sum, and with such security as should be approved, for the due performance of his duty, and the payment over of any moneys that he might receive.

Under the authority delegated by these resolutions, the agent, Bowie, prior to January, 1860, procured to be subscribed by persons residing in the city of Baltimore, Anne Arundel, Prince George's and Charles counties, 1946 shares of the capital stock of the Company, of the par or nominal value of $50 per share, and which subscriptions were accepted by the Company. On these 1946 shares, it is agreed that Bowie has been paid the one dollar per share, and also three per cent. on 180 shares of the stock, for which certificates have been issued, and also the further sum of three per cent. on seven dollars per share, paid on the residue of the 1946 shares; and that the claim now insisted on, as being subject to condemnation under the attachment, is three per cent. on the balance unpaid on the subscriptions obtained, that is to say, a balance of $43 per share on 1766 shares of stock.

By the Act of incorporation, 1853, ch. 194, under which this stock was subscribed, it is provided, in the third sec-

tion, that upon every subscription of stock there shall be paid at the time of subscribing two dollars on each and every share subscribed ; "and the remainder shall be paid in such instalments, and at such times as may be required by the president and directors of the said company ; provided, no payment shall be demanded until at least thirty days public notice of said demand shall have been given by the said president and directors, and if any subscribers shall fail or neglect to pay any instalment, or part of subscription thus demanded, for the space of sixty days after the same shall be due, the stock on which it is payable *shall be forfeited to the company*, and may be sold by the said president and directors, for the benefit of the said company ; but the president and directors may, *in their discretion*, remit any such forfeiture, and institute and sustain, in the name of the company, action or actions before any tribunal in this State, having jurisdiction of the subject-matter, to recover from any subscriber thus making default, any instalment or part of subscription so as aforesaid demanded."

It was in proof that demand was duly made of the subscribers for the balance due on the stock, and that they failed or neglected to make payment; and that on the 4th of September, 1872, the appellees, by resolution regularly passed, forfeited the stock procured by Bowie to be subscribed, with the exception of 182 shares. It was also in proof that the forfeitures had not been remitted by the appellees, nor have they sold, or attempted to sell, any part of the stock so forfeited ; and they never instituted actions for the recovery of any of the subscriptions obtained by Bowie.

There is no question made as to the regularity of the subscriptions, or as to the legality of the proceedings upon which the forfeitures were declared.

It was shown in proof that, at the time of the trial below, the stock had but little or no market value ; though

in 1867 the president of the company purchased on his own account, from the original subscribers, their interest in 754 shares of the stock returned by Bowie, for the price of two dollars per share. That, however, was embraced in the stock forfeited to the company, by the resolution of the 4th of September, 1872.

Upon this State of the case the Court below decided that there were no rights or credits in the hands of the appellees, belonging to Robert Bowie, that were subject to judgment of condemnation, except the commission on $86 which had been received by the appellees on some part of the stock that Bowie had procured to be subscribed ; and, upon a review of the case, we do not perceive that any other judgment could have been properly entered.

The contract, under which the services were rendered, must be taken as having been made with reference to the rights and powers of the corporation under its charter, with respect to the stock subscribed ; and as it was stipulated that the commissions should be paid only as the subscriptions to the stock *were paid in,* it would seem to be very clear that, until the money or its equivalent be realized by the company, either by the voluntary payment of the subscriber or his assignee, or by the modes of coercion designated in the charter, no commission could be claimed as due and payable thereon. This term in the contract we may well suppose to have been inserted for the protection of the company against subscriptions that might prove worthless ; and that it was contemplated by the parties at the time that the commission should be confined to the amounts actually realized on the subscriptions obtained. The right to forfeit and sell the stock, given by the charter, is but a mode of enforcing payment of the subscription, and the corporation had its election either to pursue that remedy, or to resort to its action to recover of the subscriber the amount due on his subscription. The right to resort to either of these remedies was in the contempla-

tion of the parties to the contract, and until they are resorted to, and the money due on the subscriptions, if not voluntarily paid, be realized either by suit or the sale of the stock, no claim for commissions on the mere subscriptions can be enforced.

By declaring the forfeitures, as has been done, the stock reverted to the company, and all the rights and liabilities of the stockholders were extinguished; and, unless the forfeiture be remitted, no recovery can be had against the delinquent subscriber. But it does not follow that because the stock has been forfeited in default of payment of the calls made thereon, the agent's claim for commissions is thereby extinguished. Not by any means. And whatever may have been the cause of the great delay on the part of the company in attempting to make the subscriptions available, as the agent procuring the subscriptions is interested in the money to be realized therefrom, it may be that he has ample remedy by which to compel the company either to sell the stock, or to remit the forfeitures and and institute actions for the recovery of the balance due on the subscriptions. See 1 *Red. on Railw.*, 168; *Germantown Passenger Railw. Co. vs. Fitler*, 60 *Penn. St.*, 124. Until that be done, and the money actually realized, there is no such certain ascertained or ascertainable amount due for commissions, under the contract, as to be liable to attachment.

From this construction of the contract it follows, that there was no error in the rulings of the Court below, either in the rejection of evidence, or the refusal of the prayers offered by the appellant.

*Judgment affirmed.*

(Decided 21st January, 1876.)